**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

EDWIN OTERO-RIVERA ET. AL.,

    **Plaintiffs**

        **v.**

SUPERINTENDENT JOSÉ FIGEROA-
SANCHA ET. AL.,

    **Defendants**

**CIVIL NO.** 10-1406 (JAG)

**OPINION AND ORDER**

GARCIA-GREGORY, D.J.

    Before the Court are several motions to dismiss, advanced by co-defendants Luis A. Cardona ("Mr. Cardona"), Elifredo Pagán-Martínez ("Mr. Pagán"), Ramón Rodríguez-Irizarry ("Mr. Rodríguez"), Elson Osorio-Febres ("Mr. Osorio"), Sergeant José Figueroa-Andújar ("Sergeant Figueroa"), and Police Superintendent José Figueroa Sancha ("Figueroa Sancha"). (Docket Nos. 16, 17, 18, 29, and 33). For the reasons set forth, the Court **GRANTS** Sergeant Figueroa's and Figueroa Sancha's motions to dismiss. Furthermore, the Court **DENIES** Mr. Cardona's, Mr. Pagán's, Mr. Rodríguez, and Osorio's motions to dismiss.

Civil No. 10-1406                                              2

## FACTUAL AND PROCEDURAL BACKGROUND

The Court draws the following facts from Plaintiffs'
Complaint and takes them as true for purposes of resolving the
motions to dismiss.

Plaintiffs Edwin Otero-Rivera ("Otero"), Andrea Rios-
Rodríguez ("Rios"), and the conjugal partnership composed by
them (collectively, "Plaintiffs") filed their claims against the
above named co-defendants on May 14, 2010. Plaintiffs' civil
action was filed pursuant to 42 U.S.C. § 1983
("Section 1983") alleging violations of the Fourth and
Fourteenth Amendments of the United States Constitution.
Plaintiffs also advanced a supplemental claim under the Puerto
Rico Civil Code.

On August 8, 2009, Mr. Otero was driving in his vehicle
with his wife, Mrs. Rios, and their daughter. Mr. Otero stopped
at a traffic light a car away from a red Mazda pick-up motor
vehicle when he neared the first intersection in the town of
Aguadilla. The red Mazda was in the left lane, was not in
motion, and had its emergency blinkers turned on. When the
traffic light changed, Mr. Otero drove past the red Mazda
vehicle under the belief that it was damaged. A few moments
later, the driver of that vehicle, Mr. Osorio, blocked Mr.
Otero's path with his vehicle. Mr. Osorio got close to Mr.

Civil No. 10-1406                                                    3

Otero's car and began shouting that Mr. Otero had hit his car and ordering Mr. Otero to get out of his car. Both Mr. Otero and his wife, Mrs. Rios, responded that they had not hit Mr. Osorio's vehicle and refused to get out of the car.

Mr. Osorio pursued Mr. Otero's car and obstructed its path when they reached the next traffic light. Mr. Osorio got close to Mr. Otero's car in a menacing way, took out his gun, and aimed it at Mr. Otero's car without identifying himself as a police officer.

Mr. Otero repeated to Mr. Osorio that he had not impacted his vehicle, but Mr. Osorio insisted that he had and accused Mr. Otero of driving drunk. Mr. Osorio attempted to take Mr. Otero's car keys and Mr. Otero sped away. Mr. Osorio called the Police Command Center at 7:52 PM.

When Mr. Otero arrived at the traffic light near Los Corazones Avenue, he was stopped by several armed policemen including Mr. Cardona, Mr. Pagán, and a policeman identified in the Complaint as Joe Rodríguez. Mr. Cardona, Mr. Pagán, and Joe Rodríguez did not check Mr. Otero's vehicle to verify if it had been scratched or revealed any signs of a collision.

Mr. Cardona, Mr. Pagán, and Joe Rodríguez forced Mr. Otero out of the car and took away his mobile phone, thereby interrupting his call to the Police Command Center. Mr. Cardona, Mr. Pagán, and Joe Rodríguez pushed Mr. Otero to the rear end of

Civil No. 10-1406                                                4

his vehicle. Mr. Otero was then grabbed by force and handcuffed so tightly that his wrists bled. Mr. Cardona, Mr. Pagán, and Joe Rodríguez did not state their names or showed their badges, as they were wearing jackets. Mr. Cardona, Mr. Pagán, and Joe Rodríguez then sprayed Mr. Otero with pepper spray. Mrs. Rios was also sprayed with pepper spray, as was their daughter, because they were shouting at the policemen that Mr. Otero is handicapped and asking that they stop hurting Mr. Otero.

Mr. Otero was shocked with a taser gun around his ribs on three occasions. Mrs. Rios and her daughter kept trying to assist Mr. Otero and were pushed and assaulted as a result. Mrs. Rios cried for the policemen to stop hitting Mr. Otero and informed them that Mr. Otero has a prosthetic knee. One of the three officers grabbed Mr. Otero's daughter by the arm and squeezed until she was bruised. Mrs. Rios, who is 64 years old and suffers from herniated discs in her cervical area and lower back, was also hit.

Mr. Osorio finally identified himself as a police officer assigned to the Mayaguez precinct. On more than one occasion, Mr. Osorio told Mrs. Rios and her daughter that they should convince Mr. Otero that he had hit Mr. Osorio's vehicle. Mr. Osorio also requested from Mrs. Rios insurance information for the vehicle to claim damages. Meanwhile, Mr. Otero was being

Civil No. 10-1406                                                           5

tested for alcohol inside a patrol car. Mr. Otero's alcohol test
came back negative.

    Mr. Otero was taken to police headquarters. Mrs. Rios and
her daughter were not provided any information as to the
location of the headquarters. While Mr. Otero was being driven
to the police headquarters, one of the defendants began telling
him that they were going to file charges against his wife and
that he should accept that he hit Mr. Osorio's vehicle. When Mr.
Otero reached the police headquarter, he was interviewed by
Sergeant Figueroa. Sergeant Figueroa also interviewed Mrs. Rios
and her daughter. Sergeant Figueroa called the prosecutor for
further proceedings. The prosecutor assigned to the case decided
not to file any criminal charges against Mr. Otero or his
family.


                          **STANDARD OF REVIEW**


    In Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the
Supreme Court held that to survive a motion to dismiss under
Rule 12(b)(6), a complaint must allege "a plausible entitlement
to relief." Rodríguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92,
95-96 (1st Cir. 2007) (quoting Twombly, 550 U.S. at 559). While
Twombly does not require the heightened fact pleading of
specifics, it does require enough facts to "nudge [plaintiff]

Civil No. 10-1406                                                    6

claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570. Accordingly, in order to avoid dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Id. at 555.

In Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), the Supreme Court upheld Twombly and clarified the principles that must guide this Court's assessment of the adequacy of the plaintiff's pleadings when evaluating whether or not a complaint can survive a Rule 12(b)(6) motion. See Iqbal, 129 S.Ct. at 1949-50. The court must identify any conclusory allegations in the complaint as such allegations are not entitled to an assumption of truth. Id. at 1949. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). A claim has facial plausibility when the pleaded facts allow the court to reasonably infer that the defendant is liable for the specific misconduct alleged. Id. at 1949, 1952. Such inferences must be more than a sheer possibility and at least as plausible as any obvious alternative explanation. Id. at 1949, 1951. Plausibility is a context-specific determination that requires the court to draw on its judicial experience and common sense. Id. at 1950.

Civil No. 10-1406                                                    7

In a recent case, Ocasio-Hernández v. Fortuño Burset, 640 F.3d 1 (1st Cir. 2011), the First Circuit analyzed and distilled several principles from the Supreme Court decisions in Twombly and Iqbal. It thus boiled down the inquiry a Court must perform while resolving a motion to dismiss under Fed.R.Civ.Proc. 12(b)(6) to a two-pronged approach. The first step involves the process of identifying and disregarding the threadbare recitals of the elements of a cause of action and/or the legal conclusions disguised as fact. Ocasio-Hernández, 640 F.3d at 12. The second step involves treating the non-conclusory factual allegations as true, even if seemingly incredible, and determine if those "combined allegations, taken as true, state a plausible and not merely a conceivable, case for relief." Id. (quoting Sepúlveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010)).

The First Circuit warned that even if determining the plausibility of a claim "requires the reviewing court to draw on its judicial experience and common sense," it must not attempt to forecast the likelihood of success even if recovery is remote and unlikely. Id. (quoting Iqbal, 129 S. Ct. at 1950) (other citations omitted). It further stated that, "[t]he relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the Court to draw from the facts alleged in the complaint. Id. at 13.

Civil No. 10-1406                                              8

## DISCUSSION

### Co-defendants Mr. Cardona and Mr. Pagán

42 U.S.C. § 1983, ("Section 1983") authorizes an injured person to assert a claim for relief against a person who, acting under color of state law, violated the claimant's federal protected rights. Plaintiffs' Complaint alleges a violation of the Fourth Amendment, as well as a due process claim under the Fourteenth Amendment.

Co-defendants Mr. Cardona and Mr. Pagán seek dismissal of the claims against them on the grounds that Plaintiffs failed to state a claim upon which relief can be granted. In essence, these two co-defendants posit that the Complaint does not meet the minimal facts of who did what to whom, when, where, and why that must be included in a complaint. Educadores Puertorriquenos en Accion v. Hernandez, 367 F.3d 61, 68 (1st Cir. 2004).

The Court finds that the Complaint sufficiently identifies Mr. Cardona and Mr. Pagán, as well as their role in the alleged violation of Plaintiffs' civil rights. In their Complaint, Plaintiffs allege that Mr. Otero was unlawfully arrested and subjected to an unreasonable seizure. Furthermore, Plaintiffs aver that they were sprayed with pepper spray and that Mr. Otero was repeatedly shocked with a taser gun. The Complaint

Civil No. 10-1406                                        9

identifies Mr. Pagán and/or Mr. Cardona as the person who committed these acts. As a result, the Court finds that dismissal of the claims against Mr. Cardona or Mr. Pagán would be wholly inappropriate

Mr. Cardona and Mr. Pagán also request that the Court dismiss Plaintiffs' supplemental claim. The Court should decline to exercise supplemental jurisdiction over state law claims when all federal claims are dismissed. <u>See Camelio v. American Federation</u>, 137 F.3d 666, 672 (1st Cir. 1998) ("The balance of factors ordinarily weigh strongly in favor of declining jurisdiction over state law claims where the foundational federal claims have been dismissed at an early stage in the litigation."). However, the Court has not dismissed all of Plaintiffs' federal claims at this juncture and finds no need to dismiss their supplemental claim.

<u>Co-defendant Mr. Rodríguez</u>

Mr. Rodríguez avers that the Complaint fails to set forth minimal facts as to his role in the alleged violations of Mr. Otero's constitutional rights. Mr. Rodríguez posits that he is not listed as a defendant in the instant case and that no specific allegations are made against him in the Complaint.

Civil No. 10-1406                                                      10

However, the Complaint identifies a police officer by the name of Joe Rodríguez, whose name was unknown to the Plaintiffs at the time, who allegedly participated in in the violation of Mr. Otero's civil rights. (Docket No. 1). The Complaint also alleges that Joe Rodríguez was part of the group of officers who violated Plaintiffs' constitutional rights through the use of excessive force in an unlawful arrest and unreasonable seizure. The Court finds that the Complaint sufficiently identifies Joe Rodríguez's role in the violation of Plaintiffs' constitutional rights. Plaintiffs aver that the Complaint fails to identify Mr. Rodríguez more specifically because they did not know his name at the time that the Complaint was filed. As a result, the Court believes that it would be disingenuous to dismiss the claims against Mr. Rodríguez under the premise that Mr. Rodríguez is not named in the Complaint.

Therefore, the Court finds that dismissal of the claims against Mr. Rodríguez at this juncture would also be inappropriate. Similarly, the Court finds it inappropriate to dismiss the supplemental claims against Mr. Rodríguez at this time.


Co-defendant Mr. Osorio

Civil No. 10-1406                                          11

Section 1983 provides a cause of action against a person who, acting under color of state law, violated an individual's federally protected rights. See 42 U.S.C. § 1983. "An individual acts under color of state law within the meaning of [Section] 1983 when he exercises power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." Patterson v. Rhode Island, No. 10-136 ML, 2011 WL 1884180 (D.R.I. April 22, 2010) (citing United States v. Classic, 313 U.S. 299, 326 (1941)).

"Whether a police officer acts under color of state law depends on the nature and the circumstances under which the officer's conduct takes place and the relationship that conduct has to his official duties. Thus, a person acts under color of state law whenever he purports to act in an official capacity or to exercise official responsibilities and effectively abuses the position given to him by the state." Moreno-Perez v. Toledo-Davila, 764 F.Supp.2d 351, 354 (D.P.R. 2011) (citing Martinez v. Colon, 54 F.3d 980, 986 (1st Cir. 1995)).

Determining whether or not a police officer was acting under color of state law requires an inquiry into whether "a state actor's conduct occurs in the course of performing an actual or apparent duty of his office, or ... is such that the actor could not have behaved in that way but for the authority of his office." Zambrana-Marrero v. Suarez-Cruz, 172 F.3d 122,

Civil No. 10-1406                                                      12

125 (1st Cir. 1999) (citing <u>Martinez v. Colon</u>, 54 F.3d 980, 986
(1st Cir. 1995)). The concept of acting under color of state law
can be quite elusive when considering police conduct. "No
single, easily determinable factor will control whether a police
officer was acting under state law. While certain factors will
certainly be relevant - for example, a police officer's garb, an
officer's duty status, the officer's use of a service revolver,
and the location of the incident – these factors must not be
assessed mechanically." <u>Id.</u> (citing <u>Barreto-Rivera v. Medina-
Vargas</u>, 168 F.3d 42, 45 (1st Cir. 1999)).

        Therefore, courts must assess the totality of the
circumstances, thereby considering the nature and circumstances
of the officer's conduct and the relationship of that conduct to
the performance of his official duties. <u>Martinez</u>, 54 F.3d at
986-87. "An officer who abuses or exceeds his recognized
authority may be acting under color of law if, at the time in
question, [he] purposes to act in an official capacity or to
exercise official responsibilities pursuant to state law."
<u>Zambrana-Marrero</u>, 172 F.3d at 126 (citing <u>Martinez</u>, 54 F.3d at
986). The analysis must also take into consideration whether the
police officer's conduct related in some meaningful way to the
officer's governmental status or to the performance of his
duties. <u>Id.</u> (citing <u>Martinez</u>, 54 F.3d at 987) (citations
omitted).

In Martinez, the First Circuit held that the defendant, a police officer, was not acting under color of state law when he accidentally shot a fellow officer inside a police station in the course of a harassment incident. Although Martinez is illustrative of the analysis that needs to be implemented when determining whether or not a police officer was acting under color of state law, the facts in this case bear little resemblance to the facts in Martinez.

In Parrilla-Burgos, the First Circuit found that an off-shift police officer who became involved in a bar fight and fatally shot another man with his service revolver was not acting under the color of state law. Parrilla-Burgos v. Hernandez-Rivera, 108 F.3d 445, 448-50 (lst Cir. 1997). The officer, who was on medical leave and not in his uniform, had encountered the decedent at the bar, telling him: "I'll look at you whichever way I please, because I am a cop." See 108 F.3d at 447. The exchange escalated and the officer repeated his claim to special status: "I look at anybody I want, because I'm a cop. Anybody I decide I want to look at dirty, I look at them dirty." Id. The police officer then displayed his identification to the crowd and stated that he was there to keep the peace. The decedent challenged the officer to fight him outside without his gun. The officer stated that he did not need a gun to fight the decedent and stepped outside. After stepping outside, once the

Civil No. 10-1406                                                14

fight had begun, the officer pulled out his gun and shot the decedent, killing him.

The First Circuit concluded that the officer in <u>Parrilla-Burgos</u> was not acting under color of state law. The First Circuit pronounced that "statements such as those by the officer claiming a special privilege to look dirty at an individual by virtue of his position as a police officer do not constitute action under color or pretense of state law if the asserted privilege lies clearly outside the scope of their official duties." <u>Parrilla-Burgos</u>, 108 F.3d at 450-51. The Circuit court placed particular emphasis on the fact that the final exchange between the officer and the decedent constituted an invitation and acceptance to engage in a private brawl, which ended any pretense of official action by the officer.

The facts in <u>Barreto-Rivera v. Medina-Vargas</u>, involved a police officer who followed the decedent home in his police cruiser. 168 F.3d 42, 45 (1st Cir.1999). The police officer demanded the decedent's license and registration. An argument broke out between the men and the officer hit the decedent repeatedly with his night stick. The decedent went into his house, but came back out after the decedent's family members approached the officer. The decedent challenged the officer to a fistfight. The officer responded by telling the decedent not to come any closer. The decedent continued to approach and was

fatally shot. The First Circuit held that the facts and possible inferences did not lead inexorably to a finding of private conduct. The First Circuit noted numerous indicators of official action: the officer was on duty, in uniform, patrolling in his cruiser, relied on his authority as a police officer to stop the decedent, and demanded his license and registration. The Circuit court further noted that the officer used his night stick, summoned help on his police radio, and ultimately shot and killed the decedent with his service revolver. Id. at 48.

In Zambrana-Marrero, the First Circuit was faced with assessing whether two police officers who became involved in a bar fight had been acting under color of state law. 172 F.3d 122, 125 (1st Cir. 1999). In this case, two police officers who were playing pool at a bar intervened in a fight. The officers' intervention was rather excessive and resulted in the death of one of the men involved in the fight. The Circuit court noted that the police officers had intervened in the fight and made a point of contrasting how in this case the police officers acted as intervenors in a fight, a role consistent with the responsibility of police officers to defuse violent situations. Id. at 128. The court further noted other indicia of official conduct that spanned the entire interaction.[1]

---

[1] The First Circuit considered as indicators that the police officers had been involved in an official action that: the police officers told onlookers to stay away because they were police officers, the use of handcuffs, the search of and

Civil No. 10-1406                                                    16

In the case at hand, Mr. Osorio avers that he was not acting under color of state law and that, as a result, the claims against him should be dismissed. Mr. Osorio was outside of uniform and apparently in his personal vehicle when he encountered Mr. Otero. Ostensibly, Mr. Osorio was acting in his personal capacity when the encounter with Mr. Otero commenced.

However, as the interaction between the parties developed, it seems that Mr. Osorio's actions were such that he could not have acted in the way that he did but for the authority of his office. Mr. Osorio attempted to take away Mr. Otero's car keys while shouting that Mr. Otero was driving drunk and then placed a call to the police command center and reported the incident. Subsequently, Mr. Otero was detained by several police patrol cars. The Complaint seems to allege that Mr. Osorio was present and participated in the incident in which Mr. Otero and his family suffered the violation of their constitutional rights. Furthermore, the Complaint alleges that as the situation progressed, Mr. Osorio was there demanding insurance information from Mr. Otero's family and using his position as a police officer to intimidate all Plaintiffs.

Accepting as true Plaintiffs' well-pleaded factual allegations, the Court finds it unwise to grant Mr. Osorio's motion to dismiss at this juncture. Although, the Court

seizure of cocaine, and a statement by one of the officers to a friend that he planned to pursue drug and other charges.

recognizes that Mr. Osorio's actions at the beginning of his fracass with Mr. Otero were not under color of state law, the Court finds that at some point Mr. Osorio slid into his role as a police officer when he reported a drunk driver and participated in the detention of a potential drunk driver. As a result of the foregoing, the Court finds it inappropriate to dismiss the claims against Mr. Osorio. The Court further finds that dismissal of the supplemental claims against Mr. Osorio would be inappropriate.


## Motion to Dismiss as to Sergeant Figueroa


Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*, but may be liable on the basis of their own acts and omissions. Sanchez v. Pereira-Castillo, 590 F.3d 31, 49 (1st Cir. 2009) (citing Iqbal, 129 S. Ct. at 1948; Aponte Matos v. Toledo Dávila, 135 F.3d 182, 192 (1st Cir.1998)). "In the context of Section 1983 actions, supervisory liability typically arises in one of two ways: either the supervisor may be a primary violator or direct participant in the rights-violating incident, or liability may attach if a responsible official supervises, trains, or hires a subordinate with deliberate indifference toward the possibility that deficient performance

Civil No. 10-1406                                                18

of the task eventually may contribute to a civil rights deprivation." Id. (citing Camilo-Robles v. Zapata, 175 F.3d 41, 44 (1st Cir. 1999)) (internal citations and quotation marks omitted). "In either case, the plaintiff in a Section 1983 action must show an affirmative link, whether through direct participation or through conduct that amounts to condonation or tacit authorization, between the actor and the underlying violation." Id.

"To demonstrate deliberate indifference a plaintiff must show (1) a grave risk of harm, (2) actual or constructive knowledge of that risk, and (3) failure to take easily available measures to address the risk." Clancy v. McCabe, 805 N.E.2d 484, 490 (1s Cir. 2004) (citing Camilo-Robles v. Hoyos, 151 F.3d 1, 7 (1st Cir. 1998)). A supervisor may be liable by formulating a policy or engaging in a custom that leads to the challenged occurrence. "Thus, even if a supervisor lacks actual knowledge of censurable conduct, he may be liable for the foreseeable consequences of such conduct if he would have known of it but for his deliberate indifference or willful blindness, and if he had the power and authority to alleviate it." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 582 (1st Cir. 1994). In addition to deliberate indifference, the plaintiff must also affirmatively connect the supervisor's conduct to the subordinate's violative act or omission. Id.

Civil No. 10-1406                                                    19

The Court understands Plaintiffs' argument to be that Sergeant Figueroa is liable because he was willfully blind with respect to police officers with evident vicious propensities. Plaintiffs further allege that Sergeant Figueroa was deliberately indifferent because he called the District Attorney for further proceedings in the prosecution of Mr. Otero without further investigating what had transpired.

Plaintiffs do little to demonstrate that Sergeant Figueroa had actual or constructive knowledge of the other police officers' alleged behavior. In fact, Plaintiffs do little to demonstrate that Sergeant Figueroa was put on notice of behavior related to the alleged constitutional violation. The Court finds no indication that Sergeant Figueroa was willfully blind or deliberately indifferent to the actions of his subordinates. Neither do Plaintiffs sufficiently identify a causal link as to Sergeant Figueroa's behavior that would substantiate supervisory liability in this instance.

Furthermore, Sergeant Figueroa enjoys qualified immunity. The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Guillemard-Ginorio v. Contreras-Gomez, 585 F.3d 508, 526 (1st Cir. 2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818

Civil No. 10-1406                                                    20

(1982)). The qualified immunity test takes the form of a two-
part inquiry: (1) the Court must decide if the facts a plaintiff
has shown, make out a violation of a constitutional right, and
(2) if the plaintiff has satisfied the first step, the Court
must decide whether or not the right at issue was clearly
established at the time of defendant's alleged misconduct. See
id. The First Circuit recently explained that:

> [t]he clearly established step [of the qualified
> immunity analysis] is itself composed of two
> parts, which require the court to decide (1)
> whether the contours of the right [were]
> sufficiently clear that a reasonable official
> would understand that what he is doing violates
> that right, and (2) whether in the specific
> context of the case, a reasonable defendant would
> have understood that his conduct violated the
> plaintiffs' constitutional rights.

Mosher v. Nelson, 589 F.3d 488, 493 (1st Cir. 2009) (citing
Maldonado, 568 F.3d at 269)) (internal citations and quotation
marks omitted).[1] "The first part addresses the status of the law
at the time of the event in question, focusing on the clarity of
the standard with respect to the asserted constitutional right."
Id. "The second part addresses the specific factual context of
the case to determine whether a reasonable official in the

---

[1] The First Circuit in Mosher noted that the recent Supreme Court decision in Pearson
v. Callahan, 129 S. Ct. 808, 818-819 (2009), gave courts discretion in addressing the
"clearly established" step without first determining whether a constitutional right
had been violated.

Civil No. 10-1406                                              21

defendant's place would have understood that his conduct violated the asserted constitutional right." Id.

Plaintiffs argue that the violation of their constitutional rights was the result of Sergeant Figueroa's failure to take corrective action with respect to police officers with evident vicious propensities. In essence, Plaintiffs argue that Sergeant Figueroa is not entitled to a qualified immunity defense because he called the District Attorney for further proceedings. The Court disagrees with Plaintiffs. A reasonable official in Sergeant Figueroa's position would not have understood that calling the District Attorney violated Plaintiffs' asserted constitutional rights.

As a result, the Court finds that dismissal of the federal and state law claims against Sergeant Figueroa to be appropriate.


Motion to Dismiss as to Jose Figueroa Sancha


The Court has already explicated the supervisory liability standard, as well as the qualified immunity criterion in the previous section. As the Court mentioned, supervisory liability may arise "if a responsible official supervises, trains, or hires a subordinate with deliberate indifference toward the possibility that deficient performance of the task eventually

Civil No. 10-1406                                          22

may contribute to a civil rights deprivation." Pereira-Castillo, 590 F.3d at 49. In order to demonstrate that the supervisor is liable, the plaintiff must show an affirmative link through conduct that amounts to condonation or tacit authorization, between the actor and the underlying violation. Id.

Plaintiffs assert that the constitutional violations they suffered were the result of Figueroa Sancha's willful blindness to take corrective action with respect to police officers with evident vicious propensities.

Again, Plaintiffs do little to show that Figueroa Sancha had constructive knowledge of the police officer's alleged behavior. Neither do Plaintiffs sufficiently show a causal link amounting to condonation of the police officers' conduct in this case.

The Court has already outlined the criterion to be applied in the qualified immunity analysis. Plaintiffs posit that Figueroa Sancha is not entitled to qualified immunity because the alleged violation of Plaintiffs' constitutional rights was the result of Figueroa Sancha's inaction to take corrective action with respect to police officers with evident vicious propensities. In light of the absence of any specific allegations showing that Figueroa Sancha is not entitled to qualified immunity, the Court finds no reason to conclude that Figueroa Sancha lacks a qualified immunity defense.

Civil No. 10-1406                                                           23

Therefore, the Court finds it appropriate to dismiss the federal and state law claims against Figueroa Sancha.


### CONCLUSION


For the reasons stated above, the Court **GRANTS** Sergeant Figueroa's and Figueroa Sancha's motions to dismiss. The Court **DENIES** Mr. Cardona's, Mr. Pagán's, Mr. Rodríguez's, and Mr. Osorio's motions to dismiss.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 30th day of September, 2011.


S/Jay A. Garcia-Gregory
JAY A. GARCIA-GREGORY
United States District Judge